IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| BRENDA S. HINES,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C15-2004-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Brenda S. Hines seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Hines contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I.    BACKGROUND

Hines was born in 1964. She attended special education classes as a child and previously worked as a cashier, waitress, counter attendant and night auditor. AR 29, 793, 801. The Administrative Law Judge (ALJ) determined that Hines was unable to perform this past relevant work but found that she could perform other work, such as addresser, document preparer and sorter. AR 29-30. Hines alleges that she is disabled due to headaches, neck and back pain, left shoulder pain, seizures, schizophrenic affective and anxiety disorders and polysubstance abuse. AR 21.

Hines filed her application on September 15, 2011, and alleged that she had been disabled since January 1, 2000. AR 19, 38. Her application was denied initially and on reconsideration. Hines then sought a hearing before an ALJ. On May 2, 2013, ALJ Robert Milton Erickson conducted a hearing, at which Hines and a vocational expert (VE) testified. AR 40-83. On June 14, 2013, the ALJ issued a decision denying the claim. AR 16-26. The Appeals Council denied review of the ALJ's ruling on November 28, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Hines filed a complaint (Doc. No. 3) in this Court on January 28, 2015, seeking review of the ALJ's decision. On February 27, 2015, with the consent of the parties (Doc. No. 23), the Honorable Linda R. Reade transferred this case to me for final disposition and entry of judgment. The parties have now briefed the issues and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th

Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the

claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. THE ALJ'S FINDINGS

The ALJ made the following findings:

    1.    The claimant has not engaged in substantial gainful activity since September 15, 2011, the application date.

    2.    The claimant has the following severe impairments: headaches, neck and back pain, left shoulder pain, seizures, schizophrenic affective and anxiety disorders and polysubstance abuse.

    3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 C.F.R. § 416.967(c). Specifically, the claimant can lift and/or carry twenty-five pounds frequently, fifty pounds occasionally; she can sit, stand and/or walk for six hours out of an 8-hour workday, no more than sixty minutes continuously; she is to never climb ladders, ropes or scaffolds; she is unable to use the right major upper extremity above shoulder level; she is to avoid all exposure to a hazardous work environment or unprotected heights and operating of a motor vehicle; she is limited to constant simple repetitive tasks; she is to have no more than occasional detailed tasks; she is to have no employment requiring high production goals such as employments paid by the piece; she is to have no more than occasional interaction with coworkers and the public; she needs a stable work routine; and she is anticipated to miss one day of work on an unscheduled basis every two months.

    5.    The claimant is unable to perform any past relevant work.

5

6. The claimant was born on November 20, 1964, and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 15, 2011, the date the application was filed.

AR 16-36.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit Court of Appeals has explained this standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may

decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785,

789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Hines contends the ALJ's formulation of her RFC is not supported by substantial evidence for the following reasons:

    1.    The ALJ did not properly evaluate the work limitations described by Dr. Marvin Piburn, a treating psychiatrist.

    2.    The ALJ did not arrange for a consultative psychological examination.

    3.    The RFC is not supported by any treating or examining source.

Because I find that the first argument compels remand, I will not address the other two.

### A. *The Treating Psychiatrist's Opinion*

#### *1. Applicable Standards*

The Social Security regulations state, in relevant part:

> *Treatment relationship*. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of

8

determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(c)(2) [emphasis added]. This means a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 416.927(c)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).

An ALJ's failure to provide good reasons for rejecting a treating medical source opinion concerning the claimant's ability to work is reversible error. *See Reed v. Barnhart*, 399 F.3d 917, 921–22 (8th Cir. 2005) (failing to provide good reasons for rejecting treating source opinions); *see also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

### 2. *Analysis*

The Commissioner does not dispute that Marvin Piburn, M.D., was Hines' treating psychiatrist. Doc. No. 13 at 9. Dr. Piburn treated Hines since at least July 2010 and saw her at least eight times before completing interrogatories regarding Hines' mental impairments. AR 802, 803, 861, 863, 995, 999, 1005, 1023. In addition, Dr. Piburn was part of a treatment team. *See, e.g., Shontos v. Barnhart*, 328 F.3d 418 (8th Cir.

2003). The record contains reports from several other providers at Black Hawk-Grundy Mental Health Center, including therapist Patricia Nelson, that support Dr. Piburn's opinions. AR 798, 799, 801, 855, 859, 994, 997, 1021.

On April 23, 2013, Dr. Piburn completed the above-mentioned interrogatories. AR 1005. He reported that Hines' signs and symptoms included poor memory, perceptual disturbances ("still hears voices"), sleep disturbance, mood disturbance, panic attacks ("every once in awhile"), generalized persistence anxiety and difficulty thinking or concentrating. AR 1005. He then noted that her treatment included medication, being seen by a psychiatrist, participating in therapy and being involved in a peer support recovery program. AR 1006.

Dr. Piburn wrote that when Hines experienced pain, her anxiety and depression increased. AR 1007. He noted that while his clinic does not conduct intelligence testing, he had reason to believe Hines had a borderline IQ and a learning disorder. *Id.* Dr. Piburn also indicated that he anticipated Hines would be absent from work more than three times a month and reported that her impairments would preclude performance during more than 20% of an eight-hour workday in a number of areas, including the ability to (a) maintain attention and concentration for extended periods, (b) perform activities within a schedule, (c) maintain regular attendance, (d) be punctual, (e) complete a normal workday or workweek and (f) accept instructions and respond appropriately to criticism from supervisors. AR 1007-08.

The ALJ gave only little weight to Dr. Piburn's opinions while affording great weight to the opinions of non-examining state agency consulting physicians. AR 28. In crediting the consulting physicians, the ALJ did nothing but make a series of generalized statements about the expertise of state agency consultants. *Id.* For example, he noted that they "are experts in the Social Security disability programs" and described their role in the evaluation process. *Id.* The ALJ then concluded: "In the present instance, the

State agency consultants' access to and review of the entire medical evidence render their opinions both current and comprehensive. Therefore, they are given great weight." *Id*.

With all due respect, that entire passage of the ALJ's decision is meaningless. The ALJ did not even bother to state that the consultants' opinions are consistent with his own assessment of the record as a whole. The ALJ's comments boil down to nothing more than a declaration that the consultants' opinions are entitled to great weight because they are experts who reviewed the entire file. The same boilerplate language could be used in every case. If this is the only level of analysis that is necessary to favor the opinions of non-examining consultants over that of a treating physician, then the alleged deference afforded to treating-source opinions is illusory.

Meanwhile, the ALJ tendered several reasons for discounting Dr. Piburn's opinions. First, he asserted that Dr. Piburn's limitations were inconsistent with the objective medical evidence, including mental status examinations. AR 28. Similarly, the ALJ asserted Dr. Piburn did not provide objective clinical or diagnostic findings. *Id*. This is incorrect. The observations from Dr. Piburn (and therapist Nelson) do constitute objective medical evidence. The Commissioner's regulations define "objective medical evidence" as "signs" and "laboratory findings." 20 C.F.R. § 416.912(b)(1). "Signs" are then defined as follows:

> Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. *Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception*. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. § 416.928(b) [emphasis added]. Based on this definition, the observations made by Dr. Piburn and therapist Nelson are "signs" that constitute objective medical evidence in the context of mental impairments.

11

Further, the limitations set forth in Dr. Piburn's interrogatory answers are consistent with his own observations and those of therapist Nelson. On July 15, 2010, Dr. Piburn observed that Hines was anxious and noted that her energy, memory, attention and concentration were all decreased. AR 803. Dr. Piburn saw Hines again on April 18, 2011, finding her to be less stable. AR 804-06. He added Lamictal to her existing medications (which included Seroquel, Lithium, Lexapro and Clonazepam). AR 803, 806.

On June 20, 2011, Nelson saw Hines for therapy. Hines had racing thoughts, decreased sleep, irritability and generalized anxiety. AR 799. Nelson noted that Hines' response to treatment was poor. AR 800. Dr. Piburn then saw Hines on October 6, 2011, and noted some delusional behavior. AR 863.

As of January 2012, Hines' anxiety had improved somewhat. AR 861. She had good days and bad days, but the anxiety was less constant. *Id*. On April 11, 2012, Dr. Piburn described Hines as stressed and angry at her abuser.[1] AR 999. He reported that Hines had tried to break a window in her home. AR 1000. Dr. Piburn referred her to a sex abuse counselor. *Id*.

On July 13, 2012, Hines went to the emergency room complaining of memory loss. AR 967. Therapist Nelson then saw Hines on July 16, 2012. At that time, Hines was anxious and out of sorts. AR 1026. Nelson noted that Hines' condition had deteriorated recently. *Id*. Hines reported that she had blacked out from taking medications and that, on another occasion, someone had attacked her. *Id*. Hines' affect was inappropriate and she appeared upset. *Id*. Nelson indicated that she had poor insight and judgment. *Id*.

Hines reported to the emergency room again two days later. AR 973. She was anxious and agitated with auditory and visual hallucinations. *Id.* The treatment notes

---

[1] Hines suffered abuse as a child. *See, e.g.,* AR 992.

indicate that she had been off her psychotropic medications for the last several days because her daughter had taken them away. *Id.* Dr. Piburn then saw Hines on August 24, 2012. At that time, she was doing better after switching from Lorazepam to Xanax. AR 1023. However, one week later Nelson reported that Hines talked fast, jumped from subject to subject and was emotionally reactive. AR 1021. Dr. Piburn saw Hines again on November 20, 2012. He found that Hines was suffering from increased anxiety, insomnia and problems with a neighbor. AR 1014. He increased the dosage of Alprazolam for anxiety and started Hines on Prazosin for nightmares. AR 1015.

As this summary suggests, Dr. Piburn's opinions – as expressed in his interrogatory answers of April 23, 2013 – are consistent with his own contemporaneous treatment notes and those of therapist Nelson. Other evidence of record also supports Dr. Piburn's opinions. For example, on May 8, 2013, Rhonda Cue, ARNP, responded to a questionnaire regarding Hines' physical condition and limitations. Cue had seen Hines on two occasions for multiple physical complaints. AR 1037. Cue found Hines' bipolar and schizophrenia would greatly impact her ability to maintain gainful employment. AR 1041. This is consistent with Dr. Piburn's opinions and inconsistent with the ALJ's findings.

The ALJ found that Hines' severe impairments included schizophrenic affective and anxiety disorders. AR 21. Dr. Piburn, a treating source, presented opinions indicating that those impairments caused disabling limitations. While the ALJ discredited those opinions in favor of opinions submitted by non-examining sources, I find that the ALJ failed to provide good reasons, supported by the record as a whole, for doing so. As such, the ALJ's decision must be reversed and remanded for a proper evaluation of Dr. Piburn's opinions. *See, e.g., Reed*, 399 F.3d at 921–22.

Because I find that Hines' first argument requires remand, I need not reach her other arguments. On remand, the ALJ shall re-weigh the medical opinion evidence and shall provide good reasons for the weight given to each opinion. The ALJ may obtain

additional evidence and arrange for consultative examinations to the extent necessary to fully and fairly develop the record. The ALJ shall then re-formulate Hines' RFC and complete the sequential evaluation process.

## VI.   CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Hines was not disabled is **reversed and remanded** for further proceedings consistent with this order. Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**

**DATED** this 9th day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE